**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS -**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **LIZBETH LEYVA, Individually and**<br>**On Behalf of All Others Similarly Situated,**<br><br>     **Plaintiff,**<br><br>**V.**<br><br>**35 BAR & GRILL, LLC. d/b/a**<br>**SAN ANTONIO MEN'S CLUB,**<br>**IRAKLIS KOUROUMOUSIS, and**<br>**THOEDORE DIMOPOULOS,**<br><br>     **Defendants.** | **C.A. NO. 5:15-CV-295-FB**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION**
**AND AUTHORIZATION FOR NOTICE**
**&**
**REQUEST FOR EXPEDITED RULING ON SAME**

**I.     Introduction and summary of specific relief requested.**

Plaintiff does not seek summary judgment or a preliminary ruling on the merits.  Plaintiff

only seeks court authority, pursuant to 29 U.S.C. § 216(b), to mail and email a Notice of Rights[1]

and a Consent Form[2] to all class members.  Under the lenient test used in the Fifth Circuit, the

only issue before the Court is whether Plaintiff has presented sufficient evidence to support a

finding that the named representative is similarly situated with respect to the alleged pay practice

and job duties.[3]

---

[1] Exhibit A – Notice of Rights.
[2] Exhibit B – Consent Form.
[3] *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) ("For the class representative to be considered similarly situated to the potential opt in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in

As part of her request for notice, Plaintiff requests an order compelling 35 Bar & Grill, LLC d/b/a San Antonio Men's Club ("The San Antonio Men's Club"), Iraklis Kouroumousis, and Thoedore Dimopoulos (hereinafter collectively referred to as "Defendants") to provide to Plaintiff's counsel within ten (10) days of entry of an Order approving this Motion all contact information including, names, birth dates, driver's license number, social security number, all known telephone numbers, all known email addresses, all known addresses, and dates of employment for all of its exotic dancers employed by Defendants at any time from three years prior to the granting of this Motion to the present ("Class Members").

Plaintiff worked as an exotic dancer for Defendants at their adult entertainment club known as The San Antonio Men's Club.  Defendants improperly classified all exotic dancers as independent contractors, and consequently, failed to pay dancers minimum wage and compensate them at the overtime rate required by the FLSA.

The named Plaintiff is similarly situated to other dancers employed at Defendants' adult entertainment nightclub because the primary job duties of all dancers consisted of dancing in designated areas and performing dances for Defendants' customers at the club.  Furthermore, all dancers at Defendants' adult entertainment club were improperly classified as independent contractors, were denied pay at the federally-mandated minimum wage, and were denied overtime pay at the federally-mandated rate.[4]  In fact, Defendants did not pay the Plaintiff anything whatsoever for any hours worked.[5]  All dancers at The San Antonio Men's Cub were subject to the identical pay practice and, as a result, FLSA wage violations.  Therefore, this case

---

terms of payment provisions.") (citing, *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007)).

[4] Doc. Nos. 7 & 12, at pg. 4 ¶13 ("Defendant(s)…deny that the Club was an employer of Plaintiff or other dancers in that Plaintiff and the other dancers were independent contractors…")

[5] Exhibit C – Declaration of Lizbeth Leyva at pg. 1 ¶ 2.

should be conditionally certified as a collective action and notice of the pendency of this litigation should be issued to class members.

Time is particularly of the essence regarding this Motion because every prospective member of the collective action must affirmatively "opt in" to the action in order to toll the statute of limitations for her claim.  Therefore, Plaintiff respectfully requests that the Court rule on this Motion in an expedited fashion.

**II.**   **The standard for granting conditional certification in a *collective* action is "lenient" and substantially lower than the standard for a Rule 23 *class* action.**

**A.**   **Section 216(b) only requires Plaintiffs be 'similarly situated.'**

Plaintiff seeks conditional certification and court-facilitated notice in this collective action pursuant to section 216(b) of the FLSA.  *See* 29 U.S.C. § 216(b).  Unlike a Rule 23[6] class action in which prospective claimants must *opt-out*, conditional certification of a collective action under section 216(b) requires similarly situated employees to affirmatively *opt into* the litigation.  *Roussell v. Brinker Int'l, Inc.,* Nos. 09–20561, 10–20614, 2011 WL 4067171 (5th Cir. Tex. Sept. 14, 2011) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).  The FLSA's collective action mechanism allows for efficient adjudication of similar claims so that "similarly situated" employees whose claims are often small, may join together and pool their resources to prosecute their claims.  *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

**B.**   **The courts in this district apply a two-stage certification process.**

With respect to the standard for conditionally certifying a collective action, this Court has stated that the prevailing analysis used by the federal courts, and the Western District of Texas

---

[6] Fed. R. Civ. P. 23.

in particular, is the two-stage approach first propounded by the court in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).[7]

The first stage in the determination is the "notice stage."  At this stage, the Court considers the threshold issue of whether Plaintiff has provided sufficient proof to show that a class of similarly situated individuals exists.  *See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 860 (S.D. Tex. 2012).  The Court makes this determination and decides whether notice should be given to potential class members based only on the pleadings and any affidavits which have been submitted by the plaintiff.  *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010).  In *McKnight*, an exotic dancer FLSA case, the Court noted that "**Because the court has minimal evidence, this determination is usually made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class** that provides potential class members with the notice and the opportunity to opt in." *Id.* (emphasis added) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir. 1995)). Conditionally certifying the case at this point allows it to continue through discovery as a collective action. *Id.* at 802.

At the second stage, the Court re-examines the class after the notice, opt-in period, and discovery period have closed and makes a factual determination. *Id.*  If it finds the class is no longer made up of similarly situated persons, it may decertify the class. *Id.*  This second inquiry is usually conducted in response to a motion by defendant. *Perez v. Guardian Equity Mgmt., LLC*, 2011 WL 2672431, at (S.D. Tex. July 7, 2011).

---

[7] *See Mateos v. Select Energy Services, LLC*, 977 F.Supp.2d 640, 643 (W.D. Tex. 2013) ("This Court will apply *Lusardi's* two-stage approach in this case.").

**C.      Plaintiff's burden at the first stage has been described as "fairly lenient."**

At the "notice stage," the plaintiff bears the burden of showing there are other employees "similarly situated." *Badgett v. Tex. Taco Cabana, L.P.*, 2011 WL 609884, at *2 (S.D. Tex. Oct. 12, 2006). This burden, however, is very low and has been described as "fairly lenient." *Mooney*, 54 F.3d at 1214. *See also Heeg*, 907 F. Supp. 2d at 862; *Watson v. Travis Software Corp.*, 2008 WL 5068806, at *5 (S.D. Tex. Nov. 21, 2008). At the notice stage, the inquiry by the court is considerably less rigorous than the court's initial inquiry under the Rule 23 approach. *Id.* at *3. Further, the "similarly situated" requirement of section 216(b) is less stringent than the "similarly situated" requirement of Rules 20 and 42 of the Federal Rules of Civil Procedure. *See McKnight*, 756 F. Supp. 2d at 804. Therefore, at the notice stage, the district court's broad discretion is constrained in favor of the fairly lenient similarly situated standard of the FLSA afforded to Plaintiffs. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008).

Although the degree to which potential opt-in Plaintiffs must be similarly situated has not been precisely defined, courts agree that "[t]he positions need not be identical, but they must be similar." *Heeg*, 907 F. Supp. 2d at 862. "For the class representative to be considered similarly situated to the potential opt-in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) (quoting *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007). "Notice is appropriate when there is 'a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003) (quoting

*Crain v. Heimerich & Payne Int'l Drilling Co.*, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992);

*Allen v. McWane*, 2006 WL 3246531 at *2 (E.D. Tex. Nov. 7, 2006).  Further, Plaintiff must

show that the potential opt-in Plaintiffs have similar "identifiable facts or legal nexus . . . so that

hearing the cases together promotes judicial efficiency." *Maynor v. Dow Chem. Co.*, 2008 WL

2220394, at *5 (S.D. Tex. 2008) (quoting *Barron v. Henry Cty. Sch. Sys.*, 242 F. Supp. 2d 1096,

1103 (M.D. Ala. 2003)).

A single, common pay practice exists amongst all dancers in this case; namely, the

dancers were subject to an identical pay policy promulgated by Defendants.  Nonetheless, not all

courts require such evidence if the proposed collective action will promote judicial economy.  In

fact, courts in the Fifth Circuit have recently acknowledged that a single policy or plan is not

vital to conditional class action certification under the FLSA.  *See Watson v. Konica Minolta*

*Bus. Solutions USA, Inc*., No. Civ. A. H-10-986 (S.D. Tex. Nov. 22, 2010) (memorandum,

recommendation, and order) [hereinafter *Konica*]; *Dreyer v. Baker Hughes Oilfield Operations,*

*Inc.*, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008).  The *Dreyer* Court held:

> While the presence of a single decision, policy, or plan is often good evidence that
> employees are similarly situated, it should not be a requirement.  If it were, then
> subgroups of employees who share the same duties would be denied collective
> action treatment as long as their employer makes decisions, policies, and plans for
> only the larger groups of which they are a part.  The remedial purpose of the
> FLSA's collective action mechanism should not be so easily evaded.  As long as
> plaintiffs are able to show that other employees are "similarly situated," the lack
> of a common decision, policy, or plan should not be fatal.

*Id*. at *3.

In a case granting class notice, a Texas court held: "[T]he court need not find uniformity

in each and every aspect of employment to determine [that] a class of employees is similarly

situated.  The remedial nature of the FLSA and section 216 militate strongly in favor of allowing

cases to proceed collectively." *See Tolentino v. C&J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642,

647 (S.D. Tex. 2010) (*citing Albanil v. Coast 2 Coast, Inc.*, No. Civ. A. H-08-486, 2008 WL 4937565, at *3 (S.D. Tex. Nov.17, 2008)).

**D.     The court should not consider the merits of Plaintiff's claims at this stage.**

Some employers attempt to defeat class notice by arguing the merits of the underlying FLSA violation instead of focusing on the common practice that applies to the employees.  Such attacks are flawed. "[E]ven if Plaintiffs' claims turn out to be meritless or, in fact all Plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case."  *See Krueger v. New York Tel. Co.*, No. Civ. A. 93 CIV. 0178 (LMM), 93 CIV. 0179 (LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993); *see also Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999) ("subsequent discovery may reinforce or undermine" the preliminary finding of similarly situated).  Thus, it is at the second stage, and not the initial conditional certification stage that a court can look into possible defenses and individual differences between plaintiffs. The analysis at this early stage is that the putative class members share similarities in job responsibilities and were subject to a similar pay provision.

**III.    Statement of facts.**

**A.     Facts regarding the common pay violation among all dancers at The San Antonio Men's Club.**

Defendants operate The San Antonio Men's Club, an adult entertainment club in San Antonio, Texas and employ over one hundred and fifty (150) exotic dancers at this location.[8] The named Plaintiff is a former exotic dancer at The San Antonio Men's Club.[9]  The following

---

[8] Exhibit D – The San Antonio Men's Club website ("The San Antonio Men's Club is the largest Gentlemen's Club in San Antonio! We have over 150 of the most beautiful entertainers in town.")

[9] Exhibit C – Declaration of Lizbeth Leyva at pg. 1 ¶ 2.

facts apply equally to all of the dancers who worked, or currently work, at The San Antonio

Men's Club:

1.  The Plaintiff and opt-in Plaintiff's primary job duties were to dance in designated areas and perform individual dances for Defendants' customers.[10]

2.  The San Antonio Men's Club did not pay any compensation to its dancers, who worked at the club.[11]

3.  The San Antonio Men's Club charged dancers a "house fee" upon arrival at the club depending on their time of arrival to the club.[12]

4.  The San Antonio Men's Club required dancers to share their tips with other employees who are not eligible to receive tips such as disc jockeys ("DJ") and managers.[13]

5.  The San Antonio Men's Club set the minimum tip charge per dance that dancers could charge customers.[14]

6.  The San Antonio Men's Club encouraged its customers to pay with house certificates and/or dance authorization vouchers, which resulted in the dancers receiving a substantially smaller portion of the customers' tips.  Under this system, customers purchase certificates and/or chips from the club using their credit cards.  Customers then redeem the certificates/vouchers for dances.  When the dancers turn in the certificates to the club for cash, The San Antonio Men's Club does not return the full value to them.  Instead, The San Antonio Men's Club retains a substantial portion of the tips that were intended solely for the dancers.  This retained portion grossly exceeds the merchant fee paid by the club to the credit card companies.  Furthermore, if the dancers do not turn in the certificates/vouchers they will not be compensated at all.  The dancers' tips turn into a separate, illegal profit center for The San Antonio Men's Club.[15]

---

[10] Exhibit C – Declaration of Lizbeth Leyva at pg. 1 ¶ 2.

[11] Exhibit C – Declaration of Lizbeth Leyva at pg. 1 ¶ 2.

[12] Exhibit C – Declaration of Lizbeth Leyva at pg. 3 ¶ 5, Exhibit E – Defendants' "House Fee" schedule.

[13] Exhibit C – Declaration of Lizbeth Leyva at pg. 1 ¶ 2, Exhibit F – Defendants' tip out policies.

[14] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(a), Doc. Nos. 7 & 12, at pg. 7 ¶54 ("Defendant(s) admit that the Club sets the cost that patrons must pay for the table dances.").

[15] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(j) and at pg. 3 ¶ 6, Doc. Nos. 7 & 12, at pg. 6 ¶44 ("Defendant(s) admit that when a patron pays for a table dance with a dance dollar, the dancer receives $20.00 out of the $25.00 that the patron paid the Club for the dance dollar.").

   7.   The San Antonio Men's Club legal defense to the minimum wage and overtime claim is the same for all dancers – it claims they were all independent contractors.[16]

**B.    Facts regarding the misclassification of dancers as independent contractors.**

As explained above, it is premature for the Court to address the merits of Plaintiff's claims that she was misclassified as an independent contractor. However, Plaintiff offers this evidence only to show how similarly situated the dancers are with respect to the facts on this issue.

The San Antonio Men's Club illegally classified its dancers as independent contractors.[17] However, at all times, the dancers were in fact, employees of The San Antonio Men's Club.[18] The San Antonio Men's Club misclassified the Plaintiff and Class Members as independent contractors to avoid its obligation to pay them pursuant to the FLSA.

Plaintiff was required to abide by a variety of written and unwritten rules.[19] These written and unwritten rules were enforced by The San Antonio Men's Club's practice of levying fines against entertainers who violated the rules.[20] Some of the rules promulgated by The San Antonio Men's Club include the following:

   1.   The San Antonio Men's Club sets the minimum tip for dances. The minimum tip charge per dance set by The San Antonio Men's Club is the same for all dancers regardless of which entertainer performed the dance. Entertainers are not supposed to charge a different price for a dance than the price established by the club.[21]

---

[16]Doc. Nos. 7 & 12, at pg. 4 ¶13 ("Defendant(s)…deny that the Club was an employer of Plaintiff or other dancers in that Plaintiff and the other dancers were independent contractors…").

[17] Doc. Nos. 7 & 12, at pg. 4 ¶13 ("Defendant(s)…deny that the Club was an employer of Plaintiff or other dancers in that Plaintiff and the other dancers were independent contractors…").

[18] *See* Exhibit C – Declaration of Lizbeth Leyva, generally.

[19] Exhibit G – "Rules and Regulations" signed by numerous dancers.

[20] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4, Exhibit H – Defendants' miscellaneous dancer fine policies.

[21] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(a).

2.   The "DJ" at The San Antonio Men's Club calls the stage rotation.[22]

3.   Entertainers must be on the floor soon after they sign in to work.  In order to sign in, entertainers will sign in on a sheet of paper.[23]  Finally, the entertainer would inform the "DJ" that she was ready to work and the "DJ" would let her know where he scheduled her in the dance rotation or she would pay the "DJ" a fine to stay off the stage.[24]

4.   Entertainers are required to wear certain outfits or parts of an outfit during particular days of the month or times during the night.[25]

5.   Entertainers are not allowed to sell alcohol, but must accept drinks from customers and can accept fake shots called "lady bugs."[26]

6.   The San Antonio Men's Club requires entertainers to work a particular shift during the day, or night.[27]

7.   The San Antonio Men's Club requires dancers to stay until the end of a particular shift unless they pay a fee to the manager/s to leave early.[28]

8.   The San Antonio Men's Club required dancers to submit an ***employee*** application and an ***employee*** information sheet.[29]

9.   Only The San Antonio Men's Club is authorized to set the price charged to customers for time spent in the VIP rooms.  If the dancers do not follow the club's strict policies they are fined as much as $350.[30]

10.  The San Antonio Men's Club takes at least $5.00 for each dance tip if paid on a credit card by a customer.[31]

---

[22] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(b).

[23] Exhibit I – Defendants' sign in sheet.

[24] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(c), Exhibit J – "DJ" policy regarding control of music on main stage, Exhibit H – Defendants' miscellaneous dancer fine policies.

[25] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(d).

[26] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(d), Exhibit K – Defendants' policy regarding customers purchasing drinks for dancers.

[27] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(f).

[28] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(g), Exhibit E – Defendants' "House Fee" schedule.

[29] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(h), Exhibit L – Defendants' employee application form and employee information sheet.

[30] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(i), Exhibit M – Defendants' VIP Room policy.

11. The San Antonio Men's Club prohibits dancers from chewing gum on stage or on the dance floor.[32]

12. I was discouraged from working at other adult entertainment clubs. If The San Antonio Men's Club's managers became aware that we were dancing at other gentlemen's club we would not be allowed to return. We were expected to dance exclusively at The San Antonio Men's Club.[33]

Furthermore, at the beginning of a work shift, Plaintiff was required to pay a "house fee" to San Antonio Men's Club which ranged from approximately $10 to $50, depending on the time Plaintiff arrived at work.[34]

The San Antonio Men's Club is solely in charge of the marketing and promotion that dictated the clientele that tipped the dancers.[35]   Plaintiff's ability to make money depended entirely on various financial decisions made by the club.[36]   The Plaintiff was not acting independently, but instead relied entirely upon her employer, The San Antonio Men's Club, for her income.[37]

## IV.   Plaintiff and putative Class Members are "similarly situated" with respect to their job requirements and compensation scheme.  In fact, they are identically situated.

This case is in its inception, with limited discovery conducted between the parties, yet the overwhelming evidence supports the assertion that the exotic dancers are similarly, if not

---

[31] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(j), Doc. Nos. 7 & 12, at pg. 6 ¶44 ("Defendant(s) admit that when a patron pays for a table dance with a dance dollar, the dancer receives $20.00 out of the $25.00 that the patron paid the Club for the dance dollar.").

[32] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(k), Exhibit G – "Rules and Regulations" signed by numerous dancers.

[33] Exhibit C – Declaration of Lizbeth Leyva at pg. 3 ¶ 4(l).

[34] Exhibit C – Declaration of Lizbeth Leyva at pg. 3 ¶ 5, Exhibit E – Defendants' "House Fee" schedule.

[35] Exhibit C – Declaration of Lizbeth Leyva at pg. 4 ¶¶ 15-21, Doc. No. 7 at pg. 6 ¶¶ 52 -53, Doc. No. 12 at pg. 7 ¶¶ 52 -53.

[36] Exhibit C – Declaration of Lizbeth Leyva at pg. 4 ¶¶ 15-21.

[37] *Id.*

identically, situated.  Certainly the evidence adduced in this motion satisfies the lenient standard under the applicable law.

Not only did the Plaintiff and putative class members share the same job title of exotic dancer, but they also had the same job duties of performing in designated areas for Defendants' customers and providing those customers with personal dances off stage.[38]  Furthermore, the Plaintiff and putative class members were not paid wages by The San Antonio Men's Club.[39]  Instead, their only compensation was in the form of earned gratuities or tips, of which The San Antonio Men's Club allowed them only to keep a portion.[40]  Furthermore, The San Antonio Men's Club misclassified all of its dancers as independent contractors. [41]  It did this even though The San Antonio Men's Club exerted the same level of control as to all of its dancers in all aspects of their employment.[42]

The San Antonio Men's Club's pay practice was the same as to all of its dancers.[43]  All dancers at The San Antonio Men's Club were required to provide dances for the club's customers for no pay except for tips received from the customers.[44]  All of the dancers were required to share their tips with other club employees including the management and "DJ's."[45]  As such, The San Antonio Men's Club was in violation of the tip pool provision when it failed to pay at least the tip credit minimum of $2.13 an hour and required its dancers to participate in a

---

[38] Exhibit C – Declaration of Lizbeth Leyva pg. 1 ¶ 2, and at pg. 5 ¶ 24.

[39] *Id.*

[40] *Id.*, Doc. Nos. 7 & 12, at pg. 6 ¶44 ("Defendant(s) admit that when a patron pays for a table dance with a dance dollar, the dancer receives $20.00 out of the $25.00 that the patron paid the Club for the dance dollar.").

[41] Doc. Nos. 7 & 12, at pg. 4 ¶13 ("Defendant(s)…deny that the Club was an employer of Plaintiff or other dancers in that Plaintiff and the other dancers were independent contractors…").

[42] Exhibit C – Declaration of Lizbeth Leyva at pg. 1 ¶ 3, and at pg. 5 ¶ 24.

[43] Exhibit C – Declaration of Lizbeth Leyva pg. 5 ¶ 24 and ¶ 28.

[44] Exhibit C – Declaration of Lizbeth Leyva pg. 1 ¶ 2, and at pg. 5 ¶ 24.

[45]*Id.*, Exhibit F – Defendants' tip out policies.

tip pool which included employees who do not customarily and regularly receive tips: managers and "DJ's."[46]  Furthermore, all dancers at The San Antonio Men's Club were required to pay house fees, fines, and other miscellaneous costs and fees, which further compounded the minimum wage and overtime violations.[47]  Finally, because The San Antonio Men's Club offered no pay to any of its dancers, when the dancers worked over forty hours in a workweek they did not receive their pay at the federally mandated overtime rate.[48]

The San Antonio Men's Club's pay violation applied uniformly to all of its dancers.[49] The club misclassified all of its dancers to avoid having to comply with its obligations under the FLSA.  Defendants apply the same illegal business model of misclassifying its employees as independent contractors to all class members.  The "similarly situated" requirement does not mean "identical."  However, these workers in fact performed identical work under the identical pay scheme, and they were universally misclassified as independent contractors.

## V.   Merit based arguments are premature during the first stage of class certification. Regardless, any arguments by The San Antonio Men's Club that the Plaintiff is an independent contractor does not prevent class certification in this case.

### A.   The Plaintiff is an employee of The San Antonio Men's Club, not an independent contractor.

The United States Supreme Court has specifically acknowledged that the FLSA's definition of employee is among the broadest of all labor statutes.  *See Dial Am. Mktg. v. Brock*, 474 U.S. 919 (1985).  The determination of employment status under the FLSA is guided by the

---

[46] *Chisolm v. Gravitas Rest. Ltd.*, CIV.A. H-07-475, 2008 WL 838760, at *4 (S.D. Tex. Mar. 25, 2008);  *Bernal v. Vankar Enterprises, Inc.,* 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008).
[47] Exhibit C – Declaration of Lizbeth Leyva pg. 2 ¶ 4, and at pg. 5 ¶ 24, Exhibit E – Defendants' "House Fee" schedule, Exhibit H – Defendants' miscellaneous dancer fine policies.
[48] Exhibit C – Declaration of Lizbeth Leyva pg. 1 ¶ 2, and at pg. 5 ¶ 24.
[49] Exhibit C – Declaration of Lizbeth Leyva pg. 5 ¶ 24, Doc. Nos. 7 & 12, at pg. 4 ¶13 ("Defendant(s)…deny that the Club was an employer of Plaintiff or other dancers in that Plaintiff and the other dancers were independent contractors…").

economic reality of the relationship. *See Herman v. Express Sixty-Minutes Delivery Servs., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998).  The Court's focus is whether, as a matter of economic reality, a person is economically dependent upon the employer to which she renders her services. *See Id.* This test is what has been termed by the Courts as the "economic reality test." *See, e.g., id.*; *see also Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

It is clear that the Plaintiff is an employee of The San Antonio Men's Club.  Even though Plaintiff has previously demonstrated her status as an employee to this Court, she will summarize key points below.

The San Antonio Men's Club operates its adult entertainment club in accordance with standard industry practices that have been repeatedly held to create an employer-employee relationship under the FLSA.  In fact, the Fifth Circuit itself settled this issue in 1993 when it held, "We reject the defendants' creative argument that the dancers are mere tenants who rent stages, lights, dressing rooms, and music from Circle C." *Reich v. Circle C. Invs. Ltd.,* 998 F.2d 324, 329 (5th Cir. 1993) (upholding trial court's determination that adult club dancers are employees within the meaning of the FLSA).  Other Texas courts have confirmed this result. *See* e.g., *Martin v. Priba Corp.*, 3:91-CV-2786-G, 1992 WL 486911, at *5 (N.D. Tex. Nov. 6, 1992) (exotic dancers are "employees" and are thus entitled to a minimum wage under the FLSA); *Martin v. Circle C Invs., Inc.*, No. MO-91-CA-43, 1991 WL 338239 (W.D. Tex. 1991) (finding of facts and conclusions of law that **exotic dancers were employees not contractors of club**; holding manager personally liable); *Reich v. Priba Corp.*, 890 F. Supp. 586, 594 (N.D. Tex. 1995) (after bench trial, finding dancers at adult night club were employees for purposes of the

FLSA in case brought by the Department of Labor).  The same holds true for other courts across the country.[50]

Courts addressing this issue have followed this precedent.  In *Clincy*, the court granted summary judgment in favor of the entertainers declaring them to be employees under the FLSA.[51]  The facts in *Clincy* are remarkably similar to the facts in this case.  In addition to the level of control exerted by The San Antonio Men's Club over the Plaintiff's employment as discussed in Plaintiff's Original Complaint and Plaintiff's Declaration in support of this Motion, The San Antonio Men's Club exercised control over all advertising and marketing, dance prices, club hours, club amenities, cover charges and overall club atmosphere.[52]  Consequently, The San Antonio Men's Club exercised a significant amount of control over Plaintiff's ability to make profits.  The San Antonio Men's Club's control ranged from financially significant issues, such as the minimum tip amount Plaintiff could charge for her dances,[53] how to interact with its customers,[54] and what shifts Plaintiff would have to work at what times.[55]  The San Antonio Men's Club was also solely responsible for its website used to attract customers.[56]  The San Antonio Men's Club promoted the club based on holidays and sporting events through

---

[50] *See, e.g., Clincy v. Galardi S. Enters., Inc.,* 2011 WL 3924860 (N.D. Ga. Sept. 7, 2011); *see also Diaz v. Scores Holding Co.*, No. 07 Civ. 8718, 2008 U.S. Dist. LEXIS 38248, at *6 (S.D.N.Y. May 9, 2008) (conditionally certifying FLSA collective action of entertainers and other workers at a New York City adult night club and authorizing notice to putative members of the collective action); *Whiting v. W & R Corp.*, No. 2:03-0509, 2005 U.S. Dist. LEXIS 34008, at *6-9 (S.D.W. Va. Apr. 18, 2005) (denying defendant's motion for summary judgment in wage and hour case brought by a dancer at an exotic dance club); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1347–54 (M.D. Fla. 1997) (holding that dancer at adult night club was employee for purposes of the FLSA).

[51] *Clincy,* 808 F. Supp. 2d at 1350.

[52] Exhibit C – Declaration of Lizbeth Leyva at pg. 4 ¶¶ 15-21, Doc. No. 7 at pg. 6 ¶¶ 52 -53, Doc. No. 12 at pg. 7 ¶¶ 52 -53.

[53] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(a).

[54] Exhibit G – "Rules and Regulations" signed by numerous dancers.

[55] Exhibit C – Declaration of Lizbeth Leyva at pg. 2 ¶ 4(f).

[56] Exhibit C – Declaration of Lizbeth Leyva at pg. 4 ¶ 19.

advertisements on the Internet and elsewhere, which substantially impacted both the volume and affluence of its customers.[57]  Plaintiff's status as an employee is clear.  The economic reality of the relationship between Plaintiff and The San Antonio Men's Club is that of an employer-employee, not of an independent contractor.  The same is true for other dancers.

**VI.     Exotic dancer cases have been routinely certified under the FLSA.**

Plaintiff is not the first exotic dancer to challenge the improper classification of an independent contractor.  This area of the FLSA is well traversed, yet the industry as a whole continues to violate the law.  The following is a partial list of other cases, including the Western District of Texas, that have been certified under facts virtually identical (or similar) to the facts in this case:

- *Rafeedie v. L.L.C., Inc.,* No. A–10–CA–743 LY, (W.D. Tex. May 9, 2011) (conditionally certifying class of exotic dancers who were classified by defendants as independent contractors);

- *Marez, et al v. KHG of San Antonio, L.L.C. d/b/a Tiffany's Cabaret, et al*; Civil Action No. 5:14-cv-00585-OLG-HJB, (W.D. Tex. Nov. 26, 2014). Report and recommendation adopted on December 11, 2014 (conditionally certifying class of exotic dancers claiming denial of wages);

- *Jones v. JGC Dallas LLC*, 3:11-CV-2743-O, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) report and recommendation adopted, 3:11-CV-2743-O, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (granting conditional certification of class of exotic dancers);

- *Nesselrode v. Underground Casino & Lounge, LLC*, 3:11-CV-92, 2012 WL 4378163 (N.D.W. Va. Sept. 25, 2012) (granting conditional certification of class of exotic dancers claiming unlawful classification as independent contractors and denial of wages);

- *Clincy  v. Galardi South Enterprises, Inc. d/b/a The Onyx, et al.*, 2010 WL 966639 (N.D. Ga. 2010) (granting conditional certification of class of exotic dancers claiming unlawful classification as independent contractors and denial of wages);

- *In re Penthouse Executive Club Compensation Litigation*, 2010 WL 4340255 (S.D.N.Y. 2010) (granting conditional certification and class notice to group of exotic dancers

---

[57] Exhibit N – Defendants' website events for May 2015.

where plaintiff alleged that all exotic dancers were mislabeled as independent contractors);

- *D'Antuono v. C&G of Groton, Inc.,* No. 3:11cv33 (MRK), 2011 WL 5878045 (D. Conn. Nov. 23, 2011) (granting conditional certification and class notice to a group of "exotic dancers" where plaintiff alleged that all exotic dancers were mislabeled as independent contractors); and

- *Green v. Plantation of Louisiana, LLC,* Civil No. 2:10-0364, 2010 WL 5256354 (W.D. La. Nov. 24, 2010) (collective action is warranted with respect to the class of exotic dancers where plaintiffs allege they were victims of a companywide policy of contractual misclassification and misclassification as an independent contractor has been found, by several courts, to be a sufficient common policy or plan for conditional certification purposes).

Likewise, this Court should grant conditional certification and authorize notice.

## VII.   A three year notice period is appropriate in this case.

If a violation of the FLSA is not willful, the limitations period for FLSA claims is limited to two years, while if the violation is willful, the limitations period is three years. 29 U.S.C. § 255(a).  An FLSA violation is willful if the employer " 'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.' " *Singer v. City of Waco, Tex.,* 324 F.3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988)).  The plaintiff bears the burden of showing a willful FLSA violation. *Id.; see also Samson v. Apollo Res., Inc.,* 242 F.3d 629, 636 (5th Cir. 2001) ("Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim.").

According to precedent set by Texas courts, "where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period." *Walker v. Honghua America, LLC,* 870 F.Supp.2d 462, 472 (S.D. Tex. 2012) (citing *Albanil v. Coast 2 Coast, Inc.,* 2008 WL 4937565, at *8 (S.D. Tex. Nov. 17, 2008)). "FLSA plaintiffs are not required to prove willfulness prior to discovery."  *Id.*

Here in this case, Plaintiff has alleged a willful violation.[58]  Even absent this precedent, Plaintiffs have alleged sufficient facts in their complaint to establish their entitlement to a three year notice period based on the willful conduct of The San Antonio Men's Club and its owners.[59] Defendants' misclassification of Plaintiff and Class Members as independent contractors was willful.  Defendants knew or should have known that Plaintiff and the Class Members were improperly classified as independent contractors.  Even a cursory examination of the law would have revealed this basic fact.  Further, Defendants clearly knew they were required to pay minimum wage and overtime to their employees, but chose not to do so.  At this early stage, Plaintiff has certainly alleged sufficient information for this Court to deem a three year notice period appropriate.

## VIII.   Other putative class members are interested in joining this suit.

A minority of courts have required a modest showing that other aggrieved individuals desire to "opt into" the lawsuit.  *See, e.g., Maynor v. Dow Chemical Co.*, No. Civ. A. G-07-0504, 2008 WL 2220394, at *4 (S.D. Tex. May 28, 2008) *(citing Prater v. Commerce Equities Mgmt. Co.,* No. Civ. A. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. November 19, 2007)). However, courts more recently have held that a plaintiff seeking class certification need not present evidence at this stage.[60]   Nonetheless, Plaintiff in this case satisfies that burden.

---

[58] *See* Doc. No. 1 at ¶ 32.
[59] *See* Doc. No. 1, generally.
[60] *See Watson, et. al., v. Konica,* No. Civ. A. H-10-986, at page 11 (S.D. Tex. Nov. 22, 2010) ("The court agrees that plaintiffs need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit.  There are several reasons for this. First, as already stated, this element is not a statutory requirement at this stage. Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited.  Rather, the Fifth Circuit's discuss ion of the *Lusardi* approach only requires, at the first stage, that "putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Third, unlike under Rule 23, here is no numerosity requirement in a FLSA class action lawsuit

Plaintiff knows of others who are also interested in joining this lawsuit, but have yet to join because of their fear of suffering retaliation from their employer.[61]   Moreover, one other individual has opted into this lawsuit as a plaintiff since it was first filed by the named Plaintiff.[62] A court-supervised notice with the appropriate notification about the anti-retaliation provision of the FLSA would calm their fears and allow them to act on their interest to join.

**IX.    The proposed notice is timely, accurate, and informative.  The notice should be sent via regular mail, e-mail, and by posting.**

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170.  Use of court-authorized notice also prevents "misleading communications." *Id.* at 172.

Plaintiffs' proposed court-approved notice[63]  and consent form[64] to the potential opt-ins is "timely, accurate, and informative," as required.   *Hoffmann-La Roche*, 493 U.S. at 172.   It provides notice of the pendency of the action and of the opportunity to opt in.  Plaintiff's legal claims are accurately described. Potential opt-ins are advised that they are not required to participate.  The notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in the FLSA action. *See* 29 U.S.C. § 215(a)(3).

---

under the *Lusardi* approach.") (internal citations omitted); *See, e.g., Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011) ("Plaintiff's failure to provide evidence that potential opt-in plaintiffs' desire to opt-in is not fatal to their motion."); *Villarreal v. St. Luke's Episcopal Hospital*, 751 F.Supp.2d 902, 915 (S.D. Tex.2010) ("The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit.").
[61] Exhibit C – Declaration of Lizbeth Leyva at pg. 5 ¶ 27.
[62] Doc. No. 4-1 – Consent form for opt-in Plaintiff Lydia Ortiz.
[63] Exhibit A.
[64] Exhibit B.

Plaintiff requests that Defendants be ordered to produce within ten (10) days of the granting of this Motion in an electronic format such as an excel spreadsheet, the names, all known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), social security numbers, and dates of employment for all the class members employed from three years prior to the filing of this lawsuit to the present.[65]   Such information allows Plaintiff to confirm current addresses and/or to locate those persons who may have moved from their last known addresses.   Defendants and their counsel have this information and are allowed to use it.  Plaintiff should be afforded the same right.

Further, Plaintiff proposes that the notice and consent forms be mailed by first class mail

---

[65]*Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *5 (N.D. Tex. Nov. 29, 2012); *See Eggelston v. Sawyer Sportsbar, Inc.,* 2010 WL 2639897, at *4 (S.D. Tex. June 28, 2010) (order conditionally certifying class of bartenders and granting expedited discovery of **telephone numbers and emails**); *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575, at *6 (S.D. Tex. Oct. 11, 2012) ("must provide … **e-mail addresses, telephone numbers** …of the members of the collective action class."); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ("**ORDERS** the Defendants to provide…names, job titles, addresses, **telephone numbers**, Social Security numbers, and **email addresses**, if available, of the potential class members."); *Beall v. Tyler Technologies, Inc.*, 2009 WL 1766141, at *4 (E.D. Tex. June 23, 2009) ("orders defendants to provide …names, job titles, addresses, **telephone numbers**, Social Security numbers, and **email addresses** ..."); *Luvianos v. Gratis Cellular, Inc.*, 2012 WL 6737498 (S.D. Tex. Dec. 10, 2012) report and recommendation adopted, 2012 WL 6743559, at *10 (S.D. Tex. Dec. 28, 2012) ("disclosure to Plaintiffs' counsel of employees' … **phone numbers, and email addresses** … is not unduly invasive."); *Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("orders that Defendant produce …**phone numbers, and e-mail addresses**..."); *Davis v. Mostyn Law Firm, P.C.,* 2012 WL 163941, at *11 (S.D. Tex. Jan. 19, 2012) ("shall provide …all **email addresses (personal and work)** for all class members as defined above."); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 473 (S.D. Tex. 2012) ("Defendant to produce, … work **email addresses** …");  *Bullard v. Camin Cargo*, Civil Action No. 4:13-cv-00027, Doc. 27 at page 4 (S.D. Tex. Aug. 9, 2013) (granting class **notice via email** and requiring production of email addresses and **phone numbers**); *See, Jones*, 2012 WL 6928101, at *5 (rep. and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013)); *Eggleston v. Sawyer Sportsbar, Inc.*, Civil Action No. 4:09-3529, 2010 WL 2639897, at *4 (S.D. Tex 2010) (Court granted class **notice via email**); *Watson, et al. v. Konica Minolta Bus. Solutions USA, Inc*., No. Civ. A. H-10-986, at page 21 (S.D. Tex. Nov. 22, 2010); *Beall v. Tyler Technologies, Inc.*, No. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (court granted class **notice via email** and later compelled the employer to produce all email addresses, both personal and work).

**and by electronic mail** within seven (7) days of receiving the class list from Defendants to all potential opt-ins employed at any time during the three-year period before this lawsuit was filed to present.[66]  Plaintiff's counsel will oversee the mailing (both regular mail and electronic mail) of such notices and pay the up-front charges for same (postage, copying, etc.).   Further, Plaintiff's counsel requests that it be permitted to hire, if necessary, a third party class action administration company to conduct the actual mailing of the notice and forms if it deems appropriate.

The benefits of sending notice in a conditional certification case "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."[67]  The point of sending out

---

[66] *See Phelps v. MC Communications*, Inc., No. 2:11-CV-00423-PMP-LRL, 2011 WL 3298414, 6 (D. Nev. Aug. 1, 2011) (The Court will permit Plaintiffs to **email** the notice…; *Goudie v. Satellite Communications, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, at *9 (D. Or. Oct. 14, 2008)("The court concludes that the names, addresses, phone numbers, and **e-mail** addresses of technicians are sufficient to permit notice and communication with potential members of the putative collective action."); *Beall v. Tyler Technologies, Inc.*, No. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (Court granted class notice via email.); *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D. N.Y. Jan. 17, 2012); *White v. Integrated Elec. Technologies, Inc.*, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) **("Plaintiffs have submitted ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize e-mail to provide notice of collective actions to potential class members.");** *Butler*, 876 F. Supp. 2d at, 575 ("Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail and by email..."); *Pippins v. KPMG LLP*, 2012 WL 19379, at *14 (S.D. N.Y. January 3, 2012) ("[G]iven the reality of communications today ... the provision of email addresses and **email notice** in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 3235628, at *3 n. 3 (E.D.N.Y. July 27, 2011) ("[T]he Court sees **email** as a relatively unobtrusive option" for providing notice to class members); *Denney v. Lester's, LLC*, 2012 WL 3854466 at *4 (E.D. Mo. Sept. 5, 2012) ("Court finds fair and proper notice to current and former servers will be accomplished by regular mail, **electronic mail**..."); *Santiago v. Amdocs, Inc.*, 2011 WL 6372348, at * 8 (N.D. Cal. Dec. 19, 2011) (Notice shall be "disseminated via **electronic mail**."); *Altier v. Worley Catastrophe Response, LLC*, 2012 WL 161824, at *27 (E.D. La. Jan.18, 2012); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 3794021, at *10 (W.D. Mo. Aug.25, 2011).

[67] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, (1989).

Notice to Class Members is for them to receive it, become aware of the pending litigation, and make a decision regarding joining the case.  Sending email notice only increases the chance of the class members receiving and reading the notice.  The convenience of technology dictated that the federal court system adopt an electronic case filing system.  Likewise, email notice is appropriate precisely because it is an affordable, instantaneous, and reliable way for important legal issues to be communicated to large groups of people.   For these reasons, email notice has become a common form of notification in FLSA cases.[68]  "With regard to the use of email to notify potential plaintiffs of this litigation, 'communication through email is [now] the norm.'"[69] "Email is an efficient, reasonable, and low-cost supplemental form of notice."[70]

In *Jones,* the court allowed notice to be sent via email to exotic dancers.[71]  The court noted,  "[i]n the present age, however, communication through email is the norm," and the court should  "not view the disclosure of email addresses to class counsel as being unduly intrusive on the privacy and personal interests of class members."[72]   Other Texas federal courts have

---

[68] *See Phelps v. MC Communications, Inc.*, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011).

[69] *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012).

[70] *Phelps v. MC Communications, Inc.,* 2011 WL 3298414 *6 (D. Nev. Aug. 1, 2011).

[71] *See, Jones*, 2012 WL 6928101 at *5 (rep. and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013)) ("The attached form of notice should be approved by the Court, as should Plaintiffs' request to provide notice to the conditionally certified class via regular mail and email in the manner described above.").

[72] *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012); *White v. Integrated Elec. Technologies, Inc.,* 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) **("Plaintiffs have submitted ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize e-mail to provide notice of collective actions to potential class members.");** *Butler*, 876 F. Supp. 2d at, 575 ("Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail and by email..."); *Pippins v. KPMG LLP,* 2012 WL 19379, at *14 (S.D.N.Y. January 3, 2012) ("[G]iven the reality of communications today ... the provision of email addresses and **email notice** in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.,* 2011 WL 3235628, at *3 n. 3 (E.D. N.Y. July 27, 2011) ("[T]he Court sees **email** as a relatively unobtrusive option" for providing notice to class members); *Denney v. Lester's, LLC*, 2012 WL 3854466 at *4 (E.D. Mo. Sept. 5, 2012) ("Court finds fair and

followed suit.[73]

Further, Plaintiff proposes that class members be allowed to execute their consent form electronically via a service called Right Signature,[74] which tracks the IP address and email address from which the form is being accessed and executed. This service allows class members to sign their consent forms electronically[75] by clicking on a link in an encrypted email designated only for that user, which in turn takes them to a website where they can review the document they are signing, click a box indicating they have read and understood the consent form and insert information such as their name and address.[76] Users are instantaneously provided with a PDF copy of the form they signed and a copy of the form is made accessible to Plaintiff's

proper notice to current and former servers will be accomplished by regular mail, **electronic mail**..."); *Santiago v. Amdocs, Inc.*, 2011 WL 6372348, at * 8 (N.D. Cal. Dec. 19, 2011) (Notice shall be "disseminated via **electronic mail**.."); *Altier v. Worley Catastrophe Response, LLC*, 2012 WL 161824, at *27 (E.D. La. Jan.18, 2012); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 3794021, at *10 (W.D. Mo. Aug.25, 2011).

[73] *Bullard v. Camin Cargo*, Civil Action No. 4:13-cv-00027, Doc. 27 at page 4 (S.D. Tex. Aug. 9, 2013) (granting class **notice via email** and requiring production of email addresses and **phone numbers**); *See, Jones*, 2012 WL 6928101, at *5 (rep. and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013)); *Eggleston v. Sawyer Sportsbar, Inc.*, Civil Action No. 4:09-3529, 2010 WL 2639897, at *4 (S.D. Tex 2010) (Court granted class **notice via email**); *Watson, et al. v. Konica Minolta Bus. Solutions USA, Inc.*, No. Civ. A. H-10-986, at page 21 (S.D. Tex. Nov. 22, 2010); *Beall v. Tyler Technologies, Inc.*, No. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (court granted class **notice via email** and later compelled the employer to produce all email addresses, both personal and work).

[74] Exhibit O - Example of a Right Signature executed consent form with electronic authentication.

[75] In Texas, under the Tex. Bus. & Com. Code Ann. § 322 *et. al.* (Vernon), the law recognizes the validity of electronic signatures. Specifically, it states that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." Tex. Bus. & Com. Code Ann. § 322.007 (Vernon). Further, it proceeds to state that "if a law requires a signature, an electronic signature satisfies the law." In this instance, the FLSA requires a plaintiff to file a written consent form in order to join the lawsuit. *See* 29 U.S.C.A. § 216 (West) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *See also*, 29 U.S.C.A. § 256 (West). Consequently, Texas law allows for the use of electronic signatures to be used to execute FLSA consent forms.

[76] *See* Exhibit O - Example of a Right Signature executed consent form with electronic authentication.

counsel who will, in turn, file same with the Court, just as if such document had been received via regular mail. This would merely be an additional option for signing the consent form.

Other courts have approved the use of online electronic signature opt-in forms.[77] *See also White v. Integrated Elec. Tech., Inc.*, 2013 WL 2903070 (E.D. La. June 13, 2013); *Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012). Both *Jones* and *White* permitted this method of response over the objection of the Defendant. Even more recently, the Western District of Pennsylvania noted that this method of joining a collective action is appropriate. *See Bland v. Calfrac Well Servs. Corp.*, 2013 WL 4054594 (W.D. Pa. Aug. 12, 2013).

Additionally, given the likelihood that Defendants' records are inadequate to supply contact information on each member of the proposed class, Plaintiff requests that notice be prominently posted at Defendants' place of business. Posting a notice in the workplace is a method often used to inform employees of their rights in labor disputes. *See, e.g., Hoffman Plastic Compounds, Inc. v. NLRB*, 525 U.S. 137, 152 (2002). In fact, the Western District of Texas San Antonio Division has recently granted a plaintiffs' request to post FLSA notice at the work place. *See Garcia, et al v. TWC Administration LLC d/b/a Time Warner Cable*; Civil Action No. 5:14-985-DAE; Doc. No. 26 (W.D. Tex. April 16, 2015).

Finally, Plaintiff requests that class members be given sixty (60) days to opt into the lawsuit. Such amount of time is reasonable, and will not delay the proceedings. Further, Plaintiff requests that a second notice go out thirty (30) days prior to the deadline to opt-in, but only to those individuals who have not opted in to the lawsuit.

---

[77] *Kelly v. Bank of Am., N.A.,* 2011 WL 7718421, at *2 (N.D. Ill. Sept. 23, 2011) ("[C]lass members may submit a Consent to Join form for this case by electronically providing their name, date of birth, and last four digits of their social security number."); *Jones*, 2012 WL 6928101, at *5 ("Class members should be provided the option of executing their consent forms online via an electronic signature service.").

## X.      CONCLUSION.

At this preliminary stage, Plaintiff has adduced sufficient factual basis from which this Court can determine that similarly situated plaintiffs exist.   Thus, the Court should grant Plaintiff's Motion and provide Plaintiff with the discovery requested, conditionally certify the case, and allow the Plaintiff to send out Notice.  The case should be certified with respect to:

**All current and former exotic dancers who were employed at The San Antonio Men's Club at any time from three years prior to the filing of the lawsuit to present.**


SHELLIST | LAZARZ | SLOBIN LLP


By: */s/ Ricardo J. Prieto*
        MARTIN A. SHELLIST
        Texas Bar No. 00786487
        mshellist@eeoc.net
        ROBERT R. DEBES, JR.
        Texas Bar No. 05626150
        bdebes@eeoc.net
        RICARDO J. PRIETO
        Texas Bar No. 24062947
        rprieto@eeoc.net
        11 Greenway Plaza, Suite 1515
        Houston, Texas 77046
        Telephone: (713) 621-2277
        Facsimile: (713) 621-0993

        ATTORNEYS FOR PLAINTIFF &
        CLASS MEMBERS

**CERTIFICATE OF CONFERENCE**

Pursuant to the Local Rules of this Honorable Court, I have conferred with Defendants regarding this motion and they are opposed to the relief sought by Plaintiff.

*/s/ Ricardo J. Prieto*
Ricardo J. Prieto

**CERTIFICATE OF SERVICE**

This is to certify that on August 14, 2015 a copy of the foregoing instrument was served upon all parties via the Court's electronic case filing system.

*/s/ Ricardo J. Prieto*
Ricardo J. Prieto